FILED
SUPERIOR COURT
OF GUAM

2020 JAN -3 PM 4: 17

CLERK OF COURT

By:____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM,** | **CRIMINAL CASE NO. CF0432-19** |
| vs. | **DECISION AND ORDER**<br>Motion to Suppress |
| **CARL JOHN TAITINGFONG,**<br>DOB: 05/05/1981 | |
| **DEFENDANT.** | |

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on October 1, 2019, upon a Motion to Suppress filed by **CARL JOHN TAITINGFONG** ("Defendant"). Assistant Public Defender Jocelyn Roden represented Defendant. Assistant Attorney General Steven Haderlie appeared on behalf of the People of Guam ("the People"). Upon review of the oral and written arguments and legal authorities presented by the Parties, the Court hereby **DENIES** Defendant's Motion to Suppress.

## BACKGROUND

On July 27, 2019, Guam Police Department ("GPD") Officers Burt Carbullido ("Carbullido") and Officer Fejeran (collectively "the officers") were patrolling along Route 4 near Jose Pangelinan Street in Yona. While on patrol, the officers noticed a black Nissan Frontier pickup

truck ("the truck") stopped at a stop sign. Inside the truck, they observed the vehicle operator slouch down in the driver's seat as if trying to hide. Simultaneously, Officer Carbullido recalled a recent report of a descriptively similar truck being stolen. Regarding this as suspicious, the officers decided to make a u-turn and drive towards the truck. Without warning, the truck – which was previously stopped – quickly reverses across the incoming lane to back-park into the Balajadia Apartment parking lot. The officers describe Defendant reversing approximately 70 feet whilst unlawfully crossing the opposite lane of travel. Upon arriving at the Balajadia Apartment, the officers position their patrol vehicle in front of the truck. As they approach, Officer Carbullido observes Defendant in the driver's seat and a male minor in the passenger's. Officer Carbullido reaches the driver's side door, which has its windows down, and informs Defendant he was stopped for "imprudent driving." The officers allege Defendant, freely and unprompted, claimed the truck was not stolen. When asked to provide the necessary paperwork, Defendant replied that he did not have a driver's license and that the truck was likely uninsured. Defendant was able to present the vehicle registration; however, it was not in Defendant's name, had expired a year ago, and describes the truck as gold. Officer Carbullido then inquires as to whether Defendant had ever been arrested; Defendant replies that he has served six years in prison but is now out on parole.[1]

During the exchange between Officer Carbullido and Defendant, the officer observes a loaded rifle magazine in plain view. Officer Carbullido asks who owns the magazine, but Defendant denies ownership and any knowledge as to the owner. Apart from the magazine, Officer Carbullido also observes a black pouch fixed between the truck's bucket seats. Defendant explains the pouch contains his wallet and parole papers. Officer Carbullido requests permission to search the truck, to which Defendant responds, "I have to officer. I'm on parole. Go ahead." In total, the search yielded the loaded rifle magazine and a variety of suspected drug paraphernalia within the pouch, *i.e.* zip-top bags with white residue and crystal-like substances resembling "ice," plus a glass pipe with white, burnt crystal-like substances. Defendant was placed under arrest and transported to the GPD Hagåtña Precinct. The GPD officers attempted to administer a "waiver of rights" form before interviewing

---

[1] On September 11, 2012, Defendant pled guilty to the charge of Second Degree Criminal Sexual Conduct (As a First Degree Felony) in matter CF0041-11. He served six years of imprisonment and was placed on parole.

Defendant. However, Defendant rejected the waiver and stated, "I'm not talking to anybody. Just put me in jail."

Defendant was arrested on September 27, 2019, for alleged imprudent driving, driving without a license, lack of a valid vehicle registration and vehicle insurance, and illegal possession of a Schedule II Controlled Substance, *i.e.* methamphetamine. Defendant was indicted on August 15, 2019, for Possession of a Schedule II Controlled Substance (As a Third Degree Felony), in violation of Title 9, Subsections 67.401.2(a) and (b)(1) of the Guam Code Annotated ("GCA").

On September 3, 2019, Defendant filed a Motion to Suppress pertaining to the seized evidence and statements leading to his arrest. The People filed their Opposition on September 13, 2019. Upon the Court's request, both Parties filed a Proposed Findings of Fact and Conclusions of Law; the People and Defendant filed on September 30, 2019, and October 1, 2019, respectively. An Evidentiary Hearing on the matter was heard on September 20, 2019, and taken under advisement on October 1, 2019.[2] The Court now issues this Decision and Order **DENYING** Defendant's Motion to Suppress.

## DISCUSSION

The Fourth Amendment of the United States Constitution extends to Guam via the Organic Act of Guam. *See* 48 USCA § 1421(b). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. Accordingly, warrantless searches are presumptively unreasonable. *People v. Chargualaf*, 2001 Guam 1 ¶ 14. It is the government's burden to prove that the warrantless search was reasonable under a valid warrant exception. *People v. Mansapit*, 2016 Guam 30 ¶ 13; *People of Guam v. Santos*, 1999 Guam 1 ¶ 51.

[2] At the Evidentiary Hearing, the Parties' presented testimony that was in direct contradiction to each other. The Court has reviewed the record and believes the defense witnesses' disparate– and at times conflicting – narrative raises genuine issues of veracity and credibility. This is especially so considering that in Defendant's oral and written arguments, he rationalizes at length over the details of the incident, which includes motoring of the vehicle. In light of this position, the Court finds it appropriate to restrict its analysis to the facts which depict the most probable scenario. Thus, the following Decision and Order is based on the presumption that Defendant did actually operate the truck on July 27, 2019, which is the date of the incident.

## I. The Stop of Defendant Was Valid.

Defendant argues the traffic stop was unconstitutional because the officers lacked the proper standard of proof when their impetus to stop Defendant relied on merely a slouch and stolen vehicle report. The People posit that the officers had both reasonable suspicion and probable cause to stop Defendant's vehicle when: Officer Carbullido recalled a report of a recently stolen vehicle; noted the report matched Defendant's truck; observed Defendant slouch as if hiding, and was present when Defendant operated the truck unlawfully.

Whenever a person is seized by the police, the Fourth Amendment is implicated. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975); *Terry v. Ohio*, 392 U.S. 1, 416-19 (1968). Vehicle stops implicate the Fourth Amendment because "[a]s with other categories of Fourth Amendment constraints, the reasonableness of such seizures depends on the balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Brignoni-Ponce*, 422 U.S. at 878.

Under *Terry* and its progeny vehicles can be stopped for investigative purposes on less than probable cause. *See generally Terry*, 392 U.S. 1; *see also Brignoni-Ponce*, 422 U.S. at 881. The Supreme Court held that "if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Terry*, 392 U.S. 1 at 229. An officer may stop a vehicle when there is probable cause to believe a traffic violation has occurred or where they merely have a reasonable suspicion to believe the driver has committed a traffic violation. *Chargualaf*, 2001 Guam 1 ¶ 17.

An officer must have "reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct" in order to conduct a routine traffic stop. *Guam v. Taman*, 2013 Guam 22 ¶ 22 (quoting *People v. Cundiff*, 2006 Guam 12 ¶ 40). This standard is satisfied when a reasonable officer in the same circumstances believes the events leading up to the stop amount to reasonable suspicion. *Mansapit*, 2016 Guam 30 ¶ 9; *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

Both reasonable suspicion and probable cause were present when the officers stopped

Defendant's vehicle. On its own, slouching at a stop sign and operating a vehicle matching one that was recently stolen do not establish reasonable suspicion, probable cause or even illegal conduct. Regardless, once Defendant abruptly reversed across an incoming road and back-parked into a parking lot, it substantiated the necessary standards to pull him over. The slouching, unlawful driving and report of an identical stolen vehicle all give credence to a reasonable inference of Defendant absconding: the slouching and erratic driving illustrates an attempt to flee, while the stolen vehicle report provides a prospective motive. Even if the officers stopped Defendant for just slouching and matching the stolen vehicle – which are not illegal – the officers' actual motivations are irrelevant. Subjectivity is not considered in an analysis of a valid traffic stop; whether the officers had a pretextual motive to stop Defendant is meaningless. *Whren v. U.S.*, 517 U.S. 806, 813 (1996). The moment Defendant drove unlawfully while in the presence of the officers, the requisite proof to stop him had actualized. Thus, the Court finds the stop valid.

## II. The Seizure of Defendant Was Valid.

In *Terry v. Ohio*, the Court held that officers may seize a suspect when he observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot and that suspect may be armed and presently dangerous. 392 U.S. at 31. The Guam Legislature has codified the *Terry* decision under 8 GCA § 30.10 *et seq.* Section 30.10 provides that "[w]henever a peace officer encounters any person under circumstances which reasonably indicate that such person has committed, or is committing or is about to commit a criminal offense, the peace officer may detain such person." 8 GCA § 30.10.

In the context of traffic stops, an officer is justified in seizing a vehicle if, in his presence, he observes a traffic violation. *Rodriguez v. U.S.*, 575 U.S. 348, 350 (2015). Thus, an officer may temporarily detain that vehicle in order to investigate the violation. *Id.* On this basis, a valid seizure may only last as long as it takes to address the violation for which the vehicle was stopped. *Id.* at 354-55. Absent reasonable suspicion, it is unlawful for an officer to unnecessarily and unreasonably prolong the duration of a traffic stop. *Id.* at 354. Notwithstanding, ensuring the safety of motoring vehicles and its occupants are still within the scope of an officer's mission respective to traffic-stops. *Id.* at 355. Because routine tasks are within the scope, they are not counted against the reasonable

duration of a traffic-stop. *Id.* Some relevant responsibilities include checking the driver's license, confirming any outstanding warrants, and inspecting the vehicle's registration and insurance. Yet, distinctively, an officer may investigate matters unrelated to the traffic violation provided the span of the stop is not prolonged. *Id.; Arizona v. Johnson*, 555 U.S. 323, 334 (2009) ("Officer's inquiries into matters unrelated to justification for traffic stops do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend duration of the stop.")

Defendant's seizure was not unconstitutional when the officers' questioning remained within the scope of the traffic violation. After Defendant was validly stopped, Officer Carbullido asked for his license, registration and insurance. However, Defendant could not provide any valid documentation: he did not possess a license; the registration expired a year prior and the truck was uninsured. These facts considered with Defendant's suspicious behavior, the stolen vehicle report and the discovered rifle magazine all reasonably lead the officers to infer that Defendant may be driving a stolen vehicle. The seizure of Defendant did not convert into a different type of encounter when Officer Carbullido asked to search the truck. The search was directly related to the officers' suspicions for stopping and seizing Defendant. *See Johnson*, 555 U.S. at 334-35 (holding the seizure of the defendant was not unreasonable when the officer stopped and frisked him on a suspicion of gang-activity, though he was pulled over for an expired license tag).

Defendant's seizure does not preclude the admissibility of his statements prior to his arrest. Routine traffic stops are relatively brief encounters and so are more analogous to *Terry* stops than formal arrests. For this reason, a defendant who is temporarily detained at a traffic stop is generally not considered "in custody" for the purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (expressly holding that a motorist who is temporarily detained after being stopped on suspicion of operating a motor vehicle while under the influence of intoxicating liquor is not held in custody, and, as a result, the investigating police officer is not required to furnish *Miranda* warnings to the motorist before administering field sobriety tests). Because Defendant was only seized through a traffic stop, the officers were not required to furnish *Miranda* warnings to Defendant. *Guam v. Rasauo*, 2011 Guam 1, ¶¶ 25-26. Thus, the Court finds the seizure valid and the statements

admissible.

## III. The Search of the Truck Was Valid.

Defendant argues the search of the truck was unconstitutional because no valid warrant exception applied. In contrast, the People posit the search was valid under two warrant exceptions: protective searches and consent.

### *Protective Searches of Automobiles*

Even without probable cause, a protective search of an automobile is permissible given that the scope is limited to only areas where a weapon may be hidden or found. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). A protective search of a vehicle is not unconstitutional ". . . if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id.* at 1049-50. Concisely, "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 1050 (quoting *Terry*, 392 U.S. at 27).

It was reasonable to believe Defendant was armed and dangerous. Defendant was pulled over on suspicion of vehicular theft and driving in an unlawful manner, both of which are inherently dangerous. Prior to the stop, Defendant attempted to hide from the officers; yet when caught, drove away heedlessly. This could broadly be interpreted as an attempt to flee from law enforcement. Defendant also confessed that he was currently out on parole after serving six years in prison, thus alerting the officers that he was a convicted felon. Taken together, these facts form a reasonable inference that Defendant was presently dangerous.

It was also reasonable for the officers to believe Defendant was capable of gaining immediate control of weapons. While Defendant was seated inside the truck, Officer Carbullido noticed what appeared to be a loaded rifle magazine proximal to Defendant's right. Thus, it was reasonable to infer that Defendant may possess other weapons within his immediate reach. From that standpoint, Defendant could easily withdraw a weapon and shoot at the officers, all the while shielded inside his truck. *See Pennsylvania v. Mimms*, 434 U.S. 106 (stating officers face risks when approaching a

person inside a vehicle); *see also Adams v. Williams*, 407 U.S. 143 (stating officers may encounter danger when conducting traffic stops of automobiles).

Furthermore, the discovery of the black pouch within the truck was not unconstitutional. The Court in *Long* states, "If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore that contraband[.]" 463 U.S. at 1050. Here, Officer Carbuillo requested the search of the truck only after seeing the rifle magazine in plain view. The search was not a general rummage; the black pouch was found within the same area as the magazine. Additionally, even if the black pouch did not contain a weapon, the contraband inside the pouch is still admissible as it was discovered within the limited scope of the protective search.

### Consent Granted Voluntary and through Parole

Voluntary consent is an exception to the warrant requirement. *See Chargualaf*, 2001 Guam 1 ¶ 14. The government has the burden of proving that consent to the search was voluntary in totality of the circumstances. *Id.* at ¶ 25. Though Defendant disputes whether consent was given; the fact that Officer Carbullido even requested a search is, in and of itself, evidence of consent. Nevertheless, the Court finds Defendant's parolee status warrants on-going consent for requested vehicle searches.

In *Samson v. California*, the Supreme Court held that a suspicion-less search of a parolee does not violate the Fourth Amendment. 547 U.S. 843, 857 (2006). The Court in *Samson* reasons that as parolees, society does not recognize a legitimate expectation of privacy in their favor; thus the rights related to that privacy are significantly diminished. *Id.* at 844. *Samson* explains that parole is comparable to imprisonment because it is viewed as a "continuum of state-imposed punishments." *Id.* at 843. Although an inmate may serve his remaining sentence outside physical custody, he is still considered in legal custody of the Department of Corrections; accordingly, the inmate must comply with the terms and conditions which permit his release. *Id.* at 844. The analysis in *Samson* found that the suspicion-less search of the parolee was valid as he "signed an order submitting to the condition and thus was unambiguously aware of it." *Id.* at 844 (reaffirming its previous finding in *United States v. Knights*, 534 U.S. 112, 118 (2001)).

Similarly, the District Court of Guam in *U.S. v. Rios* found that a warrantless search of a

parolee is valid if he agrees to the search as a condition of parole. No. CRIM. 06-00007, 2006 WL 1431262 (D. Guam May 17, 2006) ¶ 3. In *Rios*, an officer received information that criminal activity was occurring at a parolee's house. A week later, officers conducted a curfew check on the parolee. When the parolee answered the door, the officers informed him that the house was going to be searched. During the search, an officer noticed a loaded firearm magazine in the kitchen. However, when questioned, the parolee denied ownership. The officers continued the search, which yielded multiple firearms and marijuana plants. *Rios* held that the search was valid because "[t]here [was] no indication that the [parolee] did not understand that he had agreed to a search of his residence as a condition of his parolee." *Id.* at 4.

The circumstances are identical here. There is no indication Defendant opposed to the search or did not understand his parole conditions. Because Defendant was released on parole, he should have already been cognizant that his release conditions included law enforcements' authority to search him; otherwise he would not have been released. This is demonstrated when Defendant disclosed his parole status to the officers and then explicitly acknowledged the search condition of his release, to wit: when Officer Carbullido requested consent to search, Defendant replied, "I have to officer. I'm on parole. Go ahead." Like in *Rios*, Defendant was unequivocally aware of the search condition and thus, willingly submitted himself to the search. *But see U.S. v. Caseres*, 533 F.3d 1064, 1075-76 (9th Cir. 2008) (holding the search of a defendant's car was unconstitutional when the officers lacked sufficient knowledge as to the defendant's parole status). For these reasons, the Court finds the search valid.

Conclusively, the Court finds that the stop, search and seizure of Defendant did not infringe on his constitutional rights and are thus valid. Therefore, suppression of the evidence and statements are not warranted.

///

///

///

///

///

## CONCLUSION

Based on the preponderance of the evidence and the foregoing conclusions, the Court hereby **DENIES** Defendant's Motion to Suppress.

A **Criminal Trial Setting** is set for ___1/22/2020___ at ___10 a.m.___

**SO ORDERED** this ___3rd___ day of <u>January 2020</u>.

_____
The Honorable Anita A. Sukola
Judge, Superior Court of Guam

SERVICE VIA COURT BO.
I acknowledge that a copy of the
Original hereto was placed in the
court box of:

JAN - 3 2020
Date:_____ Time: 4:20 pm

Deputy C_____